UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

x----------------------------------------------------------x

Kensington International Limited,

Claimant,

05 Civ 5101 (LAP)

v.

Société Nationale des Pétroles du Congo,       **Declaration of Olivier Schnerb**
Bruno Jean-Richard Itoua,
BNP Paribas S.A.,

Defendants.

x----------------------------------------------------------x

I, the undersigned, OLIVIER SCHNERB, performing my professional activities at 6 rue Thénard, 75005 Paris, France, submit the following declaration, pursuant to 28 U.S.C section 1746:

## I.    INTRODUCTION

1.      I am an attorney admitted to the Paris bar since 1977 and I practice in particular in the area of French criminal and commercial litigation.

2.      Dechert LLP, acting on behalf of Kensington International Limited ("Kensington"), has asked me to submit this declaration in response to the legal opinion of Mrs. Chantal Cutajar dated July 30, 2005 enclosed by the Defendants with their brief, inasmuch as the legal questions raised fall within my specific area of expertise.

3.      The purpose of this declaration is to review the various types of court actions described by Mrs. Chantal Cutajar as available to Kensington in France, in order to obtain compensation for the harm suffered due to the activities that Kensington alleges were

1

carried out by the Defendants. The Defendants are in fact accused of having set up a mechanism aimed at personal enrichment to the detriment of the people of the Congo and the creditors of the Republic of Congo, of which Kensington is one, and making it possible to misappropriate the revenues resulting from the sale of oil belonging to the Republic of Congo.

4.    The Defendants wish to show that the action brought by Kensington in the United States could also be brought in France, and they attach for this purpose a legal opinion by Mrs. Cutajar describing the civil and criminal actions that she considers may be brought in France in order for Kensington to obtain redress for the harm it has suffered. According to Mrs. Cutajar, the deeds imputed to the defendants may be characterized as the criminal offenses of money laundering (*blanchiment*), corruption (*corruption*), criminal fraud (*escroquerie*), misappropriation of public funds (*détournement de fonds publics*) and criminal association (*association de malfaiteurs*), and may give rise to civil actions on the basis of Article 1167 of the French Civil Code (the "revocatory action" or *action paulienne*), general principles of fraud or liability in tort based on Article 1382 of the French Civil Code. Mrs. Cutajar concludes that the arsenal of French legal measures available to Kensington both by means of civil and criminal proceedings offers all the necessary guarantees to obtain redress for the harm it has suffered.

5.    My declaration will show that, contrary to what Mrs. Cutajar states (A) the French civil actions described by Mrs. Cutajar are inadequate because the harm Kensington claims to have suffered derives from actions of the Defendants which are prosecutable under penal law; (B) a civil action in France cannot go forward until the criminal judge has issued his decision, (C) a criminal action in France may only go forward if the public prosecutor decides to prosecute, which seems unlikely due to the historical record, and (D) even if criminal

2

proceedings were to be initiated, it is unlikely that a creditor such as Kensington would be awarded damages.

6.    In order to draw up this declaration, I have received a copy of Kensington's complaint, in a version where several paragraphs covered by a confidentiality obligation have been removed. I have also received a copy of the defense brief of BNP-Paribas dated August 8, 2005, a copy of the defense brief of SNPC dated October 17, 2005, a copy of the defense brief of Mr. Itoua dated October 17, 2005, as well as the consultation of Mrs. Cutajar dated July 30, 2005.

## II.    OPINION

(A)    <u>The French civil actions proposed by Mrs. Chantal Cutajar are inadequate because the harm Kensington claims to have suffered derives from actions of the Defendants which are prosecutable under penal law.</u>

7.    Mrs. Cutajar considers in her opinion that an action before French civil courts may be initiated by creditors with a view to (i) obtaining damages on the basis of Article 1382 of the French Civil Code or (ii) declaring the unenforceability of acts of the debtors in fraud of creditors' rights on the basis of Article 1167 of the French Civil Code (via a revocatory action called *action paulienne*[1]), or on the basis of general principles of fraud.

8.    However, as Mrs. Cutajar implicitly recognizes by citing only Article 1382 of the French Civil Code as providing a basis for damages, the French law actions pursuant to Article 1167 of the French Civil Code or under general principles of fraud are inapplicable

---

[1] TN: action by which a creditor can seek to have declared unenforceable certain transactions by a debtor with third parties prejudicial to his interests

under the circumstances.  This is true because (i) this dispute is predicated on criminal conduct for which these civil actions have no bearing, (ii) Kensington is not alleging that it was defrauded, and (iii) the applicable remedies consist of the unenforceability of the transactions that took place and which damaged Kensington and this is not what Kensington is alleging as Kensington is not seeking to undo transactions entered into by its debtors.  Moreover, even if such actions could be successfully pursued by Kensington, it could not obtain any damages as the only relief available would be a declaration that the fraudulent schemes were ineffective as to Kensington.  Given the complexity of the challenged transactions and the many victims, it is not clear how the whole scheme could be undone, i.e., be rendered unenforceable vis-à-vis Kensington.

9.    As for a tort action under Article 1382 of the French Civil Code I will demonstrate below that such an action may not proceed to judgment without a prior criminal proceeding, since the facts that constitute Kensington's complaint are inherently criminal in nature.

(B)    <u>An action before a civil court based on the subject matter of this dispute may not go forward until the criminal judge has issued his decision.</u>

10.    Articles 3 and 4 of the French Code of Penal Procedure provide as follows:

Article 3: "The civil action may be initiated together with the State [penal] action and before the same court.  It shall be admissible for all material, bodily or moral damages which derive from the facts that gave rise to the prosecution."

Article 4, "The civil action may also be prosecuted separately from the state action.  However, a stay is ordered in the judgment of a civil action brought before the civil courts until a final decision has been made on the prosecution when it has been set in motion."

4

11.     Article 4 enshrines the French legal maxim whereby "criminal proceedings require a stay of civil proceedings." Thus, in the present case, until the criminal judge has issued his decision characterizing the offenses complained of, an action before the civil courts may not go forward.

12.     Similarly, if the Public Prosecutor decides not to prosecute the Defendants, the action before the civil courts will not be able to go forward.

(C)     <u>The criminal action may only go forward if the Public Prosecutor decides to prosecute, and this is left to his discretion.</u>

13.     In the present circumstances, Kensington would have two choices: Kensington could either file a criminal complaint seeking damages directly (as a civil party) before the criminal court, or, in the event that it had already submitted a case to the civil court seeking damages, file a "simple" criminal complaint without seeking damages.

14.     In either case, pursuant to Article 40 of the French Code of Penal Procedure, "the Public Prosecutor receives the complaints and accusations and assesses the action to be taken with regard to them." Thus, in order for a proceeding to be initiated before the French criminal judge, it is necessary for the Public Prosecutor to set the prosecution in motion. This decision is left to the assessment and discretion of the Public Prosecutor, subject only to discretionary review by his hierarchical superiors.

15.     In the case in point, involving litigation between a foreign company and a major French bank, it is more than likely, based on the lack of precedents in this area, that the Public Prosecutor would be reluctant to initiate such a proceeding.

16.    In this connection, it is revealing to note that, in the January 22, 2004 report of the Organization for Economic Cooperation and Development (the "OECD") on the monitoring of the application in France of the November 21, 1997 OECD Convention on Combating Bribery of Foreign Public Officials in International Business Transactions, it was specifically stated that:

> "in practice, no prosecution has yet been brought against a legal person on a charge of corruption. According to criminal record office statistics, of a total of just over one thousand convictions for "corruption" (of all kinds) between 1994 and 2001, not one has been in respect of a legal person, despite the fact that some of the cases brought before the courts were concerned with acts of corruption committed, in whole or in part, after the new Criminal Code came into force" (paragraph 124, page 44 of the OECD report)."

(D)    Even if a criminal action were to be initiated, a claim for damages by Kensington would be likely to be inadmissible

17.    According to Mrs. Cutajar, corruption, misappropriation of public funds, criminal association, money laundering and criminal fraud are offenses which, under French law, could characterize and penalize the behavior that the Defendants are accused of.

18.    Corruption (Articles 435-3 *et seq.* of the French Penal Code), misappropriation of public funds (Article 432-15 of the French Penal Code) and criminal association (Article 450-1 of the French Penal Code) are categorized by Book IV of the French Penal Code as crimes against the Nation, the State and Public Peace.  As such, these offenses do not give rise to civil damages to private parties.  The offense of money laundering is not classified in Book IV of the French Penal Code, but the case law in this area demonstrates that damages are similarly not awarded to civil parties. As to the offense of criminal fraud, this does not correspond to the actions that Kensington imputes to the Defendants.

6

(1)    <u>With regard to corruption, misappropriation of public funds and criminal association</u>

19.    Let us study first of all these three offenses pursuant to Book IV of the French Penal Code.

20.    The predominant theory within the Criminal Division of the French *Cour de cassation*[2], up until the end of the 1970s, was the theory of general interest offenses. Pursuant to this theory, within the scope of an offense which could be classified as a general interest offense, that is, an offense pursuant to Book IV of the French Penal Code, a complaint by a plaintiff seeking damages in the context of criminal proceedings was necessarily declared inadmissible.

21.    In a decision of February 8, 1979 (*Cass. Crim. 2/8/1979*), with respect to <u>criminal association</u>, the Criminal Division of the *Cour de cassation* implied that it might be abandoning this view.    In this regard, the Criminal Division of the *Cour de cassation*, maintaining that a criminal association remained a "crime against public peace" (and therefore a general interest offense), held to be inadmissible an application for damages by a civil party which "did not demonstrate any direct damage resulting from this criminal association alone" ..., thus implying that dismissal was not automatic if direct damages could be proven.    But, since this decision, the *Cour de cassation* has consistently held to be inadmissible applications by private parties for civil damages arising within the scope of criminal associations.    The consequence of this has consistently been the dismissal, as inadmissible, of the application to join the criminal proceedings as a civil party.

_____

[2] TN2 – Court of Cassation

22.     Let us however note an exception provided for by Article 2-16 of the French Code of Penal Procedure.   According to this Article, an association that has been registered for at least five years prior to the date of the events and the objective of which is fighting against drug addiction or drug trafficking can make an application to join criminal proceedings involving drug trafficking as a civil party (Articles 222-34 *et seq.* of the French Penal Code). This exception can obviously not apply in this case.

23.     The same solution is adopted by the Criminal Division of the *Cour de cassation* with regard to criminal proceedings for <u>corruption,</u> which holds to be inadmissible applications for damages by a civil party.   In any event, corruption is not an adequate cause of action since Kensington is not imputing actions to the Defendants that apply to this offense. Corruption is defined in Article 435-1 of the French Penal Code as:

> "the unlawful proffering, at any time, directly or indirectly, of any offer, promise, gift, present or advantage of any kind to a person holding public office or discharging a public service mission, or an electoral mandate in a foreign State, or within a public international organisation, to carry out or abstain from carrying out an act of his function, duty or mandate or facilitated by his function, duty or mandate, with a view to obtaining or keeping a market or other improper advantage in international commerce."

24.     Concerning <u>the misappropriation of public funds</u>, the case law is consistent: the courts have found that the harm caused by the misappropriation of public funds can only be indirect for any private party applying to join criminal proceedings and seeking civil damages, which has thus led to the inadmissibility of complaints and applications to join criminal proceedings for misappropriation of public funds as a civil party.

8

25.     Thus, an application to join criminal proceedings as a civil party seeking damages is deemed to be declared inadmissible within the scope of the offenses pursuant to Book IV of the French Penal Code.

(2)     <u>With regard to money laundering</u>

26.     Money laundering is not considered by French law as a crime or an offense against the Nation. It is defined as follows in Articles 324-1 *et seq*. of the French Penal Code (Book III of the French Penal Code):

> "Money laundering is the act of facilitating, by any means, an inaccurate justification of the origin of goods or revenues of the perpetrator of a crime or an offense having procured a direct or indirect profit for such person. Money laundering also occurs when assistance is provided in respect of a transaction for the investment, concealment or conversion of the direct or indirect product of a crime or offense."

The relevant case law shows that, in similar circumstances, the French judge, with the rarest of exceptions, does not award damages to third parties who claim to have been the victims of money laundering and who wish to join the criminal proceedings as civil parties. Furthermore, as the courts tend to have a very restrictive view of the direct and definite nature of the harm which a civil party needs to show in order to substantiate its application for private damages arising from money laundering, they generally dismiss such applications as inadmissible. Moreover, the case law with regard to money laundering has arisen in situations that are quite different to the facts alleged by Kensington: most of these cases were relatively simple matters arising in a French domestic context.

(3)  <u>With regard to criminal fraud</u>

       27.    Mrs. Cutajar indicates that Kensington could file a criminal action against the Defendants on the basis of criminal fraud.  Criminal fraud is defined in Article 313-1 of the French Penal Code as:

> "the act of deceiving a natural or legal person by the use of a false name or a false capacity, by the abuse of a truthful capacity, or by means of unlawful manoeuvres, and thus to lead such a person, to his/her detriment or to the detriment of a third party, to transfer funds, valuables or any property, to provide a service or to consent to an act incurring or discharging an obligation."

       The subject matter of Kensington's complaint is not criminal fraud since Kensington is not alleging that it was deceived by or relied on misrepresentations of Defendants. Therefore, this cause of action suggested by Mrs. Cutajar is not applicable since Kensington has no interest or standing to sue on that basis.

       28.    Accordingly, out of the five offenses suggested by Mrs. Cutajar, two do not correspond to the alleged facts and three will lead to a decision of the French criminal judge holding the application to join the proceedings as a civil party to be inadmissible and this will prevent an award of damages to such private civil party.

## III.     CONCLUSION

29.     Contrary to what Mrs. Chantal Cutajar has concluded, the arsenal of French legal measures does not offer Kensington satisfactory guarantees in respect to adequate recourse for the harm it has suffered inasmuch as

(a)     the civil judge will not be able to examine an offense as to which a criminal judge has not yet been asked to decide,

(b)     there is no obligation for the Public Prosecutor to prosecute, and it is likely that he would not do so,

(c)     even if the criminal case were brought, the criminal judge would necessarily hold to be inadmissible (or would dismiss) all applications for damages by a private civil party within the scope of a complaint aimed at one of the offenses mentioned above, and

(d)     the civil judge may not therefore proceed to examine the facts upon which Kensington's prayer for damages is based.

I certify that the foregoing is to my knowledge absolutely exact on penalty of being held liable for providing false evidence pursuant to US law.

In Paris, France on November 14, 2005

_____
Olivier SCHNERB

11



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Jennifer Kamara, hereby certify that the following document translated from

French into English regarding the declaration of Olivier Schnerb was, to the best of

my knowledge and belief, truly and accurately edited and proofread.

_____
Signature

Sworn to before me this
23rd day of November, 2005.

_____
Signature, Notary Public

HEATHER BOSLEY
Notary Public-State of New York
No. 01BO6116856
Qualified in NEW YORK County
My Commission Expires OCT 12, 200_

_____
Stamp, Notary Public

**<u>ORIGINAL</u>**

Olivier SCHNERB
Céline CADARS-BEAUFOUR
Michèle BRAULT
Valérie MESSAS
Bertrand BURMAN
Brune QUENNOUËLLE
Stanislas PANON
Laure BERREBI
Avocats à la Cour

**CABINET D'AVOCATS**

à la Cour d'Appel de Paris

6, RUE THENARD
75005 PARIS

TEL: 01 46 34 72 50
FAX: 01 46 34 70 37

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

x----------------------------------------------------------x
Kensington International Limited,

                              Demandeur,

                    v.                                   05 Civ 5101 (LAP)

Société Nationale des Pétroles du Congo,        **<u>Déclaration d'Olivier Schnerb</u>**
Bruno Jean-Richard Itoua,
BNP Paribas S.A.,

                              Défendeurs.
x----------------------------------------------------------x

Je soussigné, OLIVIER SCHNERB, exerçant mes activités professionnelles au 6 rue Thénard

75005 Paris, France, effectue la déclaration suivante aux termes du paragraphe 1746 Titre 28 du

US Code :

**I.     INTRODUCTION**

        1.      Je suis avocat inscrit au barreau de Paris depuis 1977 et interviens plus

particulièrement en matière de contentieux pénal et commercial français.

        2.      Dechert LLP, agissant pour le compte de Kensington International Limited

("Kensington"), m'a demandé de produire cette déclaration en réponse à l'avis juridique de

1

Madame Chantal Cutajar en date du 30 juillet 2005 joint par les Défendeurs à leurs conclusions, dans la mesure où les questions juridiques soulevées relèvent de mon champ d'expertise.

3.     L'objet de cette déclaration est d'examiner les voies d'actions judiciaires que Madame Cutajar présente comme ouvertes à Kensington en France pour être indemnisée du préjudice subi du fait des activités imputées aux Défendeurs par Kensington.  Il est en effet reproché aux Défendeurs d'avoir mis au point un montage dans un but d'enrichissement personnel aux dépens du peuple congolais et des créanciers de la République du Congo dont Kensington fait partie, et permettant de détourner les revenus provenant de la vente de pétrole appartenant à la République du Congo.

4.     Les Défendeurs souhaitant démontrer que l'action introduite par Kensington aux Etats-Unis pourrait indifféremment être introduite en France, ils ont à cet effet joint une opinion de Madame Cutajar décrivant les actions civiles et pénales, qui selon Madame Cutajar sont envisageables par Kensington en France pour obtenir réparation de son préjudice. Selon Madame Cutajar, les faits imputés aux Défendeurs peuvent être qualifiés d'infractions de blanchiment d'argent, corruption, escroquerie, détournement de fonds publics ainsi que d'association de malfaiteurs et peuvent donner lieu à des actions devant les juridictions civiles sur la base de l'article 1167 du Code Civil (action paulienne), des principes généraux de fraude ou de responsabilité délictuelle sur la base de l'article 1382 du Code Civil.  Madame Cutajar conclut que l'arsenal juridique français à la disposition de Kensington tant par la voie civile que pénale offre toutes les garanties pour l'obtention de la réparation de son préjudice.

5.     Il ressortira de ma déclaration que, contrairement à ce qu'indique Madame Cutajar que (A) les actions devant les juridictions civiles françaises décrites par Madame Cutajar

seront inadéquates dans la mesure où le préjudice subi par Kensington résulte d'activités des Défendeurs relevant du droit pénal, (B) l'action civile en France ne peut aboutir tant que le juge pénal n'a pas statué, (C) l'action pénale en France ne pourra aboutir que si le procureur de la République décide d'engager la procédure, ce qui semble improbable en raison des précédents, et (D) même si l'action pénale venait à être initiée, il est improbable qu'un créancier tel que Kensington puisse obtenir des dommages-intérêts.

6.     Pour rédiger la présente déclaration, j'ai reçu une copie de la plainte de Kensington, dans une version où plusieurs paragraphes couverts par la confidentialité n'apparaissent pas. J'ai également reçu une copie du mémoire en défense de la BNP-Paribas en date du 8 août 2005, copie du mémoire en défense de la SNPC en date du 17 octobre 2005, copie du mémoire en défense de Monsieur Itoua en date du 17 octobre 2005, ainsi que la consultation de Madame Cutajar en date du 30 juillet 2005.


## II.   OPINION

(A)   <u>Les actions devant les juridictions civiles françaises décrites par Madame Cutajar seront inadéquates dans la mesure où le préjudice subi par Kensington résulte d'activités des Défendeurs relevant du droit pénal.</u>

7.     Madame Cutajar indique dans son opinion que l'action devant une juridiction civile française peut être initiée par des créanciers en vue (i) d'obtenir des dommages intérêts sur la base de l'article 1382 du Code civil ou (ii) de rendre inopposable les actes des débiteurs en fraude de leurs droits sur la base de l'article 1167 du Code civil (action paulienne) ou des principes généraux de la fraude.

8.      Toutefois, ainsi que Madame Cutajar le reconnaît implicitement en ne faisant référence qu'à l'article 1382 du Code civil pour l'obtention de dommages intérêts, les actions françaises menées sur la base de l'article 1167 du Code Civil ou des principes généraux de la fraude ne peuvent pas, en l'espèce, être retenues.   En effet, (i) il s'agit d'un contentieux basé sur des faits relevant du droit pénal sur lesquelles ces actions civiles ne peuvent pas avoir d'effet, (ii) Kensington ne prétend pas avoir été victime de fraude, et (iii) les remèdes applicables consistent en l'inopposabilité des opérations qui se sont déroulées et qui ont porté préjudice à Kensington et tel n'est pas ce que Kensington recherche : Kensington ne recherche pas à défaire les opérations effectuées par ses débiteurs.   Même si de telles actions étaient menées à bien par Kensington, Kensington n'obtiendrait pas de dommages intérêts, la seule réparation disponible aux termes de ces actions étant l'inefficacité des actes frauduleux vis-à-vis de Kensington.   En outre, en raison de la complexité des opérations mises en cause et la multiplicité des victimes, il n'est pas évident de déterminer comment elles pourraient être défaites, c'est-à-dire rendues efficacement inopposables à Kensington.

9.      Quant à une action sur la base de l'article 1382 du Code civil, il ressortira de ma déclaration qu'une telle action ne peut aboutir sans procédure pénale dans la mesure où les faits qui font l'objet de la plainte de Kensington relèvent par nature du droit pénal.

(B)     <u>L'action devant une juridiction civile ne peut pas aboutir tant que le juge pénal n'a pas statué</u>.

10.     Les articles 3 et 4 du Code de procédure pénale prévoient que:

Article 3 : "L'action civile peut être exercée en même temps que l'action publique et devant la même juridiction. Elle sera recevable pour tous chefs de dommages, aussi bien matériels que corporels ou moraux, qui découleront des faits objets de la poursuite."

Article 4 : "L'action civile peut être aussi exercée séparément de l'action publique. Toutefois, il est sursis au jugement de l'action civile exercée devant la juridiction civile tant qu'il n'a pas été prononcé définitivement sur l'action publique lorsque celle-ci a été mise en mouvement."

11.     L'article 4 consacre l'adage de droit français selon lequel "le pénal tient le civil en l'état."   Ainsi, en l'espèce tant que la juridiction pénale n'a pas qualifié les infractions dont Kensington se plaint, l'action devant les juridictions civiles ne pourra pas aboutir.

12.     De même, si le procureur de la République décide de ne pas engager de poursuites contre les Défendeurs, une action devant les juridictions civiles ne pourra pas aboutir.

(C)     <u>L'action pénale ne pourra aboutir que si le procureur de la République décide d'engager lui-même la procédure, ce qui est laissé à sa discrétion.</u>

13.     En l'espèce, Kensington aurait deux options : Kensington peut décider de déposer une plainte avec constitution de partie civile (soit, avec demande de dommages intérêts) devant la juridiction pénale.   Kensington peut également si elle a déjà saisi la juridiction civile pour obtenir des dommages intérêts, déposer une plainte "simple" devant les juridictions pénales sans demande de dommages intérêts.

14.     Quel que soit le cas de figure considéré, en vertu de l'article 40 du Code de procédure pénale, "le procureur de la République reçoit les plaintes et les dénonciations et apprécie la suite à leur donner."   Ainsi, afin qu'une procédure soit engagée devant le juge pénal français, il est nécessaire que le procureur de la République mette l'action publique en mouvement.   Cette décision est soumise à l'appréciation et à la discrétion du procureur de la République, sous réserve d'un contrôle exercé de manière discrétionnaire par ses supérieurs hiérarchiques.

5

15.    En l'espèce, dans le cadre d'un contentieux opposant une société étrangère et une grande banque française, il est probable que, sur la base de l'absence de précédent dans ce domaine, le procureur de la République soit peu disposé à engager une telle procédure.

16.    Il est à cet égard révélateur de noter que, dans le rapport 2004 de l'Organisation de Coopération et de Développement Economiques ("OCDE") sur le suivi en France de la Convention du 21 novembre 1997 sur la lutte contre la corruption d'agents publics étrangers dans les transactions commerciales internationales du 22 janvier 2004, il a été spécifiquement remarqué que,

> "dans la pratique, aucune poursuite n'a encore été engagée contre une personne morale pour faits de corruption : sur un total d'un peu plus d'un millier de condamnations pour "corruption" (toutes infractions confondues) de 1994 à 2001 selon les statistiques de casier judiciaire, aucune n'a concerné une personne morale, en dépit même du fait que certaines affaires venues devant les tribunaux concernaient des actes de corruption commis en tout ou partie après l'entrée en vigueur du nouveau code pénal [permettant la condamnation pénale de personnes morales]" (paragraphe 124, page 44 du rapport OCDE)".

(D)    Quand bien même l'action pénale serait initiée, une demande en dommages-intérêts de Kensington ne sera pas accueillie.

17.    Selon Madame Cutajar, la corruption, le détournement de fonds publics, la participation à une association de malfaiteurs, le blanchiment et l'escroquerie sont les infractions qui, en droit français, pourraient qualifier et sanctionner les comportements visés dont les Défendeurs sont accusés.

18.    La corruption (article 435-3 et suite du Code pénal), le détournement de fonds publics (article 432-15 du Code pénal), ainsi que la participation à une association de malfaiteurs (article 450-1 du Code pénal) sont qualifiées par le Livre IV du Code pénal de délits contre la Nation, l'Etat et la Paix Publique.  En tant que telles, ces infractions ne donnent pas lieu

6

au versement de dommages et intérêts à des parties civiles.   Le blanchiment n'est pas une infraction répertoriée dans le Livre IV du Code pénal, mais la jurisprudence montre que, de manière similaire, des dommages et intérêts ne sont pas versés à des parties civiles à cette occasion.   Quant au délit d'escroquerie, il ne correspond pas aux activités imputées par Kensington aux Défendeurs.

(1)   <u>Sur la corruption, le détournement de fonds publics et la participation à une association de malfaiteurs</u>

19.   Etudions tout d'abord ces trois infractions du Livre IV du Code pénal.

20.   La théorie dominante de la chambre criminelle de la Cour de cassation, jusqu'à la fin des années 1970 était la théorie des infractions d'intérêt général.   En vertu de cette théorie, dans le cadre d'une infraction pouvant être qualifiée d'intérêt général, c'est-à-dire les infractions du Livre IV du Code pénal, une plainte avec demande d'indemnisation par une partie civile dans le cadre d'une procédure pénale était nécessairement déclarée irrecevable.

21.   Dans un arrêt du 8 février 1979 (Cass. Crim. 8/2/1979), en matière de <u>participation à une association de malfaiteurs</u>, la chambre criminelle de la Cour de cassation a laissé croire qu'elle avait mis fin à cette théorie.   En effet, la chambre criminelle de la Cour de cassation en maintenant que la participation à une association de malfaiteurs restait un "crime contre la paix publique" (donc une infraction d'intérêt général) déclarait irrecevable une partie civile demandant des dommages et intérêts et qui "n'invoquait aucun préjudice direct provenant de cette seule participation à une association de malfaiteurs" ... laissant ainsi supposer que l'irrecevabilité n'était pas automatique si un préjudice direct pouvait être prouvé.   Mais, depuis cette décision, la Cour de cassation a constamment déclaré irrecevable les constitutions de partie

7

civile dans le cadre d'associations de malfaiteurs.  La conséquence était toujours l'irrecevabilité de la constitution de partie civile dans le cadre de procédure pénale.

22.    Notons cependant une exception prévue par l'article 2-16 du Code de procédure pénale.  En effet, selon cet article, une association déclarée depuis au moins cinq ans à la date des faits et dont l'objet est la lutte contre la toxicomanie ou le trafic de stupéfiants peut se constituer partie civile dans le cadre d'une procédure impliquant un trafic de stupéfiants (Article 222-34 et suivants du Code pénal).  Cette exception ne peut bien évidemment pas s'appliquer en l'espèce.

23.    La même solution est dégagée par la chambre criminelle de la Cour de cassation en matière de <u>corruption</u>, qui déclare irrecevable la demande de dommages intérêts par une partie civile.  En tout état de cause, la corruption n'est pas une voie d'action adéquate dans la mesure où Kensington n'impute pas aux Défendeurs des activités correspondant à cette infraction.  Le délit de corruption est défini par l'article 435-3 du Code Pénal comme :

> "le fait de proposer sans droit, à tout moment, directement ou indirectement, des offres, des promesses, des dons, des présents ou des avantages quelconques pour obtenir d'une personne dépositaire de l'autorité publique chargée d'une mission de service public, ou investie d'un mandat électif public dans un Etat étranger ou au sein d'une organisation internationale publique, qu'elle accomplisse ou s'abstienne d'accomplir un acte de sa fonction, de sa mission ou de son mandat ou facilité par sa fonction, sa mission ou son mandat, en vue d'obtenir ou conserver un marché ou un autre avantage indu dans le commerce international".

24.    Concernant le <u>détournement de fonds publics</u>, la jurisprudence est constante: les tribunaux ont établi que le préjudice causé par le détournement de fonds publics ne peut être qu'indirect pour toute personne souhaitant se constituer partie civile, ce qui entraîne ainsi l'irrecevabilité des plaintes avec constitution de partie civile dans le cadre d'une procédure pénale sur la base de détournement de fonds publics.

25.     Ainsi, la constitution de partie civile dans le cadre d'une procédure pénale est vouée à une déclaration d'irrecevabilité dans le cadre des infractions du livre IV du Code pénal.

(2)     Sur le blanchiment

26.     Le blanchiment n'est pas considéré par le droit français comme un crime ou un délit contre la Nation.  Sa définition est donnée aux articles 324-1 et suivant du Code pénal (Livre III du Code pénal) :

> "Le blanchiment est le fait de faciliter, par tout moyen, la justification mensongère de l'origine des biens ou des revenus de l'auteur d'un crime ou d'un délit ayant procuré à celui-ci un profit direct ou indirect.  Constitue également un blanchiment le fait d'apporter un concours à une opération de placement de dissimulation ou de conversion du produit direct ou indirect d'un crime ou d'un délit."

Une analyse de la jurisprudence montre que, dans des cas d'espèce similaires, le juge français n'alloue que très exceptionnellement des dommages et intérêts à des tiers victimes d'une activité de blanchiment et qui se sont constitués parties civiles dans le cadre de procédure pénale.  Par ailleurs, dans la mesure où les tribunaux ont une appréciation très restrictive du caractère direct et certain du préjudice subi qu'une partie civile doit montrer afin de fonder sa demande de dommages intérêts dans le cadre de blanchiment, ils rejettent en général de telles constitutions de partie civile.  En outre, la jurisprudence en matière de blanchiment montre des situations différentes des faits allégués par Kensington:  il s'agit pour la plupart d'affaires relativement simples dans un contexte de droit interne.

9

(3)    Sur l'escroquerie

27.    Madame Cutajar indique que Kensington pourrait déposer une plainte pénale contre les Défendeurs sur la base du délit d'escroquerie.  Le délit d'escroquerie est défini à l'Article 313-1 du Code pénal comme :

> "le fait, soit par l'usage d'un faux nom ou d'une fausse qualité, soit par l'abus d'une qualité vraie, soit par l'emploi de manœuvres frauduleuses, de tromper une personne physique ou morale et de la déterminer ainsi, à son préjudice ou au préjudice d'un tiers, à remettre des fonds, des valeurs ou un bien quelconque, à fournir un service ou à consentir un acte opérant obligation ou décharge."

L'objet de la plainte de Kensington n'est pas l'escroquerie, Kensington ne prétendant pas avoir été trompé ou s'être fondé sur une fausse qualité des Défendeurs.  Ainsi, cette voie d'action suggérée par Madame Cutajar n'est pas recevable puisque Kensington n'a ni intérêt ni qualité à agir.

28.    Par conséquent, sur les cinq infractions suggérées par Madame Cutajar, deux ne correspondent pas aux faits imputés et trois conduiront à une irrecevabilité ou à un rejet de la constitution de partie civile prononcée par le juge répressif, ce qui rendra impossible le versement de tous dommages intérêts à une telle partie civile.

## III.    CONCLUSION

29.    Contrairement à ce qu'indiquait Madame Chantal Cutajar, l'arsenal juridique français n'offre pas de garanties satisfaisantes à Kensington quant à des recours adéquats pour la réparation de son préjudice dans la mesure où

(a)    le juge civil ne pourra pas procéder à l'examen d'infractions dont le juge pénal n'a pas eu à connaître,

10

(b)    aucune obligation ne s'impose au procureur de la République qui n'est donc pas tenu d'engager des poursuites, et il est probable qu'il n'engage pas de telles poursuites,

(c)    même si l'action pénale venait à être initiée, le juge pénal déclarerait nécessairement irrecevable (ou rejetterait) toute demande de dommages intérêts par une partie civile dans le cadre d'une plainte visant l'une des infractions reprochées, et

(d)    le juge civil ne pourra donc pas procéder à l'examen des faits sur lesquels Kensington fonde sa demande de dommages intérêts.


Je certifie sous peine d'être passible de faux témoignage aux termes de la loi américaine que ce qui précède est à ma connaissance absolument exact.

A Paris, France le 14 novembre 2005

Olivier SCHNERB